Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **AILYRIS VARGAS NEGRON**<br><br>Apelante<br><br>v.<br><br>**ORIENTAL BANK Y OTROS**<br>Apelados | KLAN202401034 | ***APELACIÓN***<br>procedente del Tribunal de Primera Instancia Sala Superior de **Aibonito**<br><br>Caso Número:<br>AI2022CV00148<br><br>Sobre:<br>**DISCRIMEN (LEY NUM. 100)** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 12 de febrero de 2025.

Comparece la parte apelante, Ailyris Vargas Negrón, en adelante, Vargas Negrón o apelante, mediante recurso de "*Apelación*", y nos solicita la revocación de la "*Sentencia Sumaria*" notificada por el Tribunal de Primera Instancia, Sala Superior de Aibonito, en adelante TPI- Aibonito, el 21 de octubre de 2024. En la sentencia apelada, el foro recurrido declaró "*Ha Lugar*" la "*Moción de la Sentencia Sumaria*" presentada por Oriental Bank y Héctor Cruz, en conjunto, apelados.

Por los fundamentos que expondremos a continuación, *confirmamos el dictamen apelado.*

### I.

Los hechos que dan curso a la controversia que hoy nos ocupa, tuvieron su génesis durante el año 2020, cuando la apelante trabajaba en la sucursal de Aibonito de Oriental Bank. El referido Banco realizó una investigación al recibir una denuncia sobre el comportamiento de la apelante en su ambiente laboral. Así las cosas, el 26 de febrero de 2021, la apelante presentó una demanda

Número Identificador

SEN2025 _____

contra los aquí apelados, en un pleito independiente al de epígrafe, con el alfanumérico AI2021CV00067.[1] Dicho petitorio se realizó al amparo de la Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico, en adelante Ley Núm. 90-2020, 29 LPRA et. seq. 3111; y la Ley contra el Discrimen en el Empleo, en adelante Ley Núm. 100-1959, 20 LPRA et seq. 146. Así, el 6 de diciembre de 2021, el TPI-Aibonito desestimó el pleito, sin perjuicio, para darle la oportunidad a la apelante de agotar los remedios provistos por la Ley Núm. 90-2020.[2] Además, concluyó que no se justificaba un remedio al amparo de la Ley Núm. 100-1959, supra.

Así las cosas, el 11 de mayo de 2022, Vargas Negrón y su cónyuge, Marcos Santiago Luna, presentaron una "*Demanda*" sobre hostigamiento laboral y daños y perjuicios en contra de los apelados y sus aseguradoras, cuyos nombres eran desconocidos.[3] La apelante alegó que, en octubre del año 2020, Oriental Bank inició una investigación dirigida en su contra por una denuncia recibida por un empleado de la sucursal del Banco de Aibonito. Indicó haber sido notificada de dicha investigación por el equipo de Recursos Humanos de Oriental Bank, a pesar de que no se le indicaron los motivos de esta, ni el nombre del empleado que había hecho la denuncia. A su vez, sostuvo que, tras haber concluido una investigación amañada y deficiente, Oriental Bank concluyó que la apelante realizaba comentarios ofensivos y tocaba temas de política en el trabajo. Adujo, además, que no se le permitió poder defenderse y que, de manera punitiva a raíz de la investigación, fue trasladada a otra sucursal, donde le asignaron a un puesto distinto. Arguyó que dichas acciones constituyeron hostigamiento laboral, discrimen, y represalias en su contra. Indicó que lo sucedido le continuaba

---

[1] SUMAC, Entrada 13, Anejo 1.
[2] SUMAC, Entrada 1, Anejo 2.
[3] SUMAC, Entrada 1.

causando daños emocionales severos que requirieron atención psiquiátrica, y represalias infundadas que culminaron con el cambio de sucursal de la apelante. Así pues, le solicitó al Foro Primario que ordenara a los apelados a pagar ciento setenta y cinco mil dólares ($175,000.00) por los daños y angustias mentales sufridos por la apelante, setenta y cinco mil dólares ($75,000.00) por los daños y angustias mentales sufridos por el cónyuge de la apelante, más diez mil dólares ($10,000.00) por concepto de costas y el pago de honorarios de abogado.

El 23 de junio de 2022, los apelados presentaron la "*Contestación a Demanda*".[4] En lo pertinente, alegaron que el equipo de Recursos Humanos de Oriental Bank le notificó a la apelante que, de la investigación, se concluyó que su comportamiento y actuaciones fueron percibidas por sus compañeros como inapropiadas, faltas de respeto y despectivas. Adujeron que se le dio oportunidad a la apelante para ofrecer su versión de los hechos, y que la investigación fue realizada conforme lo establecen los procedimientos internos del Banco. Además, plantearon que, toda acción y determinación respecto al empleo de la apelante estuvo justificada y fue motivada por razones legítimas de negocios, velando en todo momento por el buen y normal funcionamiento del negocio. A su vez, negaron categóricamente las alegaciones de hostigamiento laboral. Así, los apelados indicaron que todas las acciones de Oriental Bank fueron ejercidas conforme la Ley Núm. 90-2020, supra. En consecuencia, por sus acciones no constituir acoso laboral, y por sus alegaciones dejar de exponer hechos que justifiquen la concesión de un remedio, solicitaron que se declarara "*No Ha Lugar*" la demanda instada por la apelante.

---

[4] SUMAC, Entrada 10.

Tras varios incidentes procesales, el 6 de diciembre de 2022, los apelados presentaron una *"Moción de Desestimación Parcial"*, y solicitaron que se desestimara, con perjuicio, la *"Demanda"* en su contra.[5] En síntesis, alegaron que, previo a la presentación del caso de epígrafe, para el año 2021, la apelante había presentado una demanda en contra de los apelados, con alegaciones prácticamente idénticas, en un pleito con el alfanumérico AI2021CV00067. Por tanto, debido a que existía una sentencia final y firme en donde el TPI-Aibonito concluyó que no se justificaba la concesión de un remedio por las mismas alegaciones, sostuvieron que, al amparo de la aplicación de la doctrina de cosa juzgada, procedía la desestimación de la reclamación bajo la Ley Núm. 100-1959, supra. A su vez, adujeron que, por segunda ocasión, las alegaciones de la apelante carecían de hechos específicos y concretos que demostrasen que fue discriminada por alguna de las modalidades de discrimen establecidas al amparo de dicha Ley. Además, sostuvieron que la demanda de epígrafe fue presentada por la apelante después de que esta hubiese agotado los remedios establecidos por la Ley Núm. 90-2020, supra, y que se limitó a alegar exactamente lo mismo que en la demanda del caso AI2021CV00067.

Así, el 13 de febrero de 2023, el TPI-Aibonito emitió "*Sentencia Parcial*".[6] Mediante este dictamen, el Foro Primario concluyó que la apelante no pudo establecer un caso de discrimen *prima facie* porque la "*Demanda*" no contenía hechos concretos, específicos y demostrativos que apuntaran hacia algún acto discriminatorio prohibido por nuestro ordenamiento jurídico. A su vez, señaló que concurrían todos los requisitos para desestimar el reclamo, al amparo de la doctrina de cosa juzgada, por existir una sentencia final y firme desestimando el reclamo de la apelante bajo la Ley Núm.

---

[5] SUMAC, Entrada 13.
[6] SUMAC, Entrada 23.

100-1959, *supra*. Por entender que procedía la desestimación de la reclamación instada al amparo de dicho estatuto, y el reclamo de daños y perjuicios, el TPI-Aibonito declaró "*Ha Lugar*" la "*Moción de Desestimación Parcial*" instada por los apelados.

Tras la continuación del proceso de descubrimiento de prueba, el 8 de julio de 2024, los apelados presentaron una "*Moción de Sentencia Sumaria*".[7] Alegaron que no existía controversia alguna de que la única causa de acción pendiente de dirimir no procedía en derecho, ya que la suma de hechos incontrovertidos, apoyados por prueba documental y testimonios bajo juramento, había demostrado que la apelante no podía probar una causa de acción bajo la Ley Núm. 90-2020, *supra*. Además, expusieron ochenta y seis (86) hechos materiales que, a su juicio, no estaban en controversia, sustentándolos con la siguiente documentación:

1. Transcripción de Deposición tomada a la Sra. Ailyris Vargas Negrón el 9 de noviembre de 2020;[8]
2. Amonestación Escrita del 29 de abril de 2014;[9]
3. Amonestación Escrita – Patrón de Ausencias del 25 de marzo de 2015;[10]
4. Amonestación Escrita con Plan de Mejoramiento del 1 de abril de 2019;[11]
5. Amonestación Verbal Documentada – Aportación en Exceso de IRA del 3 de septiembre de 2020;[12]
6. Transcripción de Deposición tomada al Sr. Héctor J. Cruz Alvarado el 7 de febrero de 2024;[13]
7. Queja de Acoso Laboral presentada por el Sr. Héctor J. Cruz Alvarado el 23 de octubre de 2020;[14]
8. Transcripción de Deposición tomada a la Sra. Xiomara Echevarría Rivera el 22 de enero de 2024;[15]

---

[7] Apéndice del recurso KLAN202401034, pág. 1039.
[8] *Id.*, pág. 1067.
[9] *Id.*, pág. 1168.
[10] *Id.*, pág. 1169.
[11] *Id.*, pág. 1170.
[12] *Id.*, pág. 1171.
[13] *Id.*, pág. 1172.
[14] *Id.*, pág. 1303.
[15] *Id.*, pág. 1304.

9. Transcripción de Deposición tomada a la Sra. Maritza Rivera Massó el 15 de diciembre de 2023;[16]

10. Transcripción de Deposición tomada a la Sra. Carmen Laureano Colón el 13 de febrero de 2024;[17]

11. Transcripción de Deposición tomada a la Sra. Sara González Vélez el 7 de febrero de 2024;[18]

12. Manual de Normas de Conducta y Disciplina para Empleados;[19]

13. Carta redactada por el Departamento de Recursos Humanos dirigida a Sra. Ailyris Vargas Negrón el 18 de febrero de 2021;[20]

14. Transcripción de Deposición tomada a la Sra. Awilda Rivera Marcano el 12 de diciembre de 2023;[21]

15. Contestación a Requerimiento de Admisiones;[22]

16. Transcripción de Deposición tomada a la Sra. Sara González Vélez el 13 de febrero de 2024.[23]

Por su parte, el 14 de julio de 2024, la apelante presentó su propia "*Moción en Solicitud de Sentencia Sumaria*".[24] En esencia, arguyó que Oriental Bank la maltrató y hostigó al llevar a cabo un proceso de investigación amañado, poco profesional y punitivo, basado en una querella frívola. Sostuvo que el hostigamiento incluyó el traslado de la apelante a otras sucursales del Banco. Por tanto, solicitó al TPI-Aibonito que declarara "*Ha Lugar*" su solicitud y ordenara la imposición de honorarios de abogados.

A su vez, en respuesta a la "*Moción de Sentencia Sumaria*" presentada por los apelados, el 23 de julio de 2024, la apelante radicó su oposición. En su "*Moción en Oposición a Solicitud de Sentencia Sumaria Presentada por Demandado y Promoviendo a Presentada por Demandante*", la apelante *admitió todos los hechos*

---

[16] Apéndice del recurso KLAN202401034, pág. 1412.
[17] *Id.*, pág. 1506.
[18] *Id.*, pág. 1549.
[19] *Id.*, pág. 1598.
[20] *Id.*, pág. 1635.
[21] *Id.*, pág. 1637.
[22] *Id.*, pág. 1659.
[23] *Id.*, pág. 1669.
[24] *Id.*, pág. 143.

*propuestos por los apelados,* salvo los mencionados a continuación:[25]

13. El 3 de septiembre de 2020, la demandante fue amonestada por su desempeño, por incumplir con las normas y políticas del Banco. Véase anejos de la solicitud de sentencia sumaria presentada por el demandante Anejo 5.

Sobre la queja presentada por Cruz en contra de Vargas.

16. El 23 de octubre de 2020, Cruz presentó una queja en contra de Vargas, mediante correo electrónico, ante el Departamento de Recursos Humanos ya que este sentía que Vargas no propiciaba un buen ambiente laboral en la sucursal de Aibonito. Además, notificó en su queja que los compañeros de la sucursal se sentían igual. Véase anejos de la solicitud de sentencia sumaria presentada por el demandante Anejo 6, Deposición de Héctor Cruz Alvarado, a la pág. 43, l. 07-19 y Anejo 7, Queja del 23 de octubre de 2020

17. Al momento que Cruz presentó la queja ante el Departamento de Recursos Humanos, este se sentía mal, drenado y como si estuviera en una calle sin salida. Véase anejos de la solicitud de sentencia sumaria presentada por el demandante Anejo 6, a la pág. 123, l. 14-25.

18. Cruz testificó que el ambiente laboral en la sucursal de Aibonito al momento de los hechos era uno pesado y que este escuchó decir a Vargas comentarios sobre la gerente de la sucursal, llamándola puerca. Véase anejos de la solicitud de sentencia sumaria presentada por el demandante Anejo 6, a la pág. 124, l. 12-23.2

21. Echevarría, como gerente de la sucursal de Aibonito, entendía que el ambiente laboral, al momento de los hechos no era uno saludable, pues era tenso entre los compañeros. Véase anejos de sentencia sumaria del demandado. Anejo 8, a la pág. 98, l. 24-25, y a las págs. 99-100.

22. Luego de haber sido presentada la queja de Héctor Cruz en contra de Vargas, Echevarría llamó a Vargas y procedieron a reunirse con ella para informarle que un empleado había presentado una queja en su contra y que a raíz de esta queja, Recursos Humanos iba a llevar a cabo una investigación. Véase anejos del demandado, Anejo 8, a la pág. 55, l. 19-25.

---

[25] Apéndice del recurso KLAN202401034, pág. 72.

26. Como parte de la investigación realizada, Rivera Massó entrevistó a cada uno de los empleados de la sucursal de Aibonito. Véase Anejo 9, a la pág. 05, l.08-23.

27. Como parte de la investigación realizada, a Vargas se le hicieron preguntas sobre su relación con los compañeros de la sucursal. Véase anejos del demandado. Anejo 1, a la pág. 38, l.08-25.

28. Como parte de la investigación realizada, surgieron comentarios de los empleados entrevistados indicando que Vargas mostraba una conducta abrasiva. Algunos empleados la describieron como tóxica. Véase Anejo 9, a la pág. 09, l. 05-15.

29. De la investigación surgió que Vargas les decía comentarios despectivos a sus compañeros en contra de la gerente de la sucursal, incluyendo expresiones de "Ay fo". Véase anejos del demandado Anejo 9, a la pág. 12, l. 10-24.

35. En esa reunión, se le informó a Vargas que de la investigación se concluyó que su comportamiento y actuaciones habían sido percibidas por sus compañeros de trabajo como inapropiadas y/o faltas de respetos. Véase Anejo 13, Carta de 18 de febrero de 2021.

38. González testificó en su deposición que Vargas también fue transferida de la sucursal de Aibonito por necesidad operacional. Véase Anejo 11, a la pág. 13, l. 06-14.

41. A pesar de que de la investigación se concluyó que Vargas había sido irrespetuosa y poco cordial con sus compañeros, Vargas no recibió una amonestación como resultado de la investigación. Véase Anejo 9, a la pág. 79, l. 03-09.

42. Rivera Massó testificó bajo juramento que transferir a un empleado a otra sucursal, no constituye una amonestación. Véase Anejo 9, a las pág. 79, l. 03-20.

43. Tras el cambio de localidad, a la demandante no se le afectó ni su salario ni sus condiciones de empleo. Véase anejos del demandado. Anejo 9, a las pág. 83, l. 19-25.

44. El movimiento de empleados entre sucursales es común en Oriental y responde a las necesidades de cada sucursal. Véase anejos del demandado Anejo 10, a la pág. 21, l. 14-20.

45. Al momento de los hechos del presente caso, las sucursales de Caguas tenían varias necesidades de recursos humanos. Véase Anejo 11, a la pág. 13, l. 16-19.

48. Rivera Massó testificó bajo juramento que, de haber tenido en esos momentos alguna vacante en Cayey, se la hubiesen concedido a Vargas. Véase Anejo 9, a la pág. 84, l. 10- 25 y la pág. 85, l.01-08.

49. Rivera Massó testificó bajo juramento que el banco estaba limitado de recursos humanos y tenían una crisis en Caguas. Véase Anejo 9, a la pág. 85, l. 01-08.

60. Rivera testificó en su deposición que el no tener el nombre del empleado bajo Branch Appointment, no afectaba las ventas y servicios, ni el cumplimiento del empleado con los números de las ventas. Véase Anejo 14, a la pág. 11, l. 1-14.

61. Bajo Branch Appointment, el cliente no escoge el empleado que lo atenderá en ventas y servicios, sino que el sistema le asigna un empleado. Véase Anejo 14, a la pág. 13, l. 13-15.

66. Vargas nunca presentó un OSR para reportar el problema de acceso a Branch Appointment que esta confrontaba. Véase Anejo 1, a la pág. 97, l.10-16.

80. Vargas nunca fue reubicada ni se reportó a trabajar a la sucursal de los Paseos. Véase Anejo 1, a la pág. 70, l. 06-17.

81. Echevarría testificó bajo juramento que luego de Vargas haber sido transferida de la sucursal de Aibonito, el ambiente laboral en la sucursal de Aibonito mejoró. Véase Anejo 8, a la pág. 102, l. 13-18.

En síntesis, la apelante volvió a plantear los argumentos esbozados en su petitorio de sentencia sumaria y solicitó que se declarara "*No Ha Lugar*" la instada por los apelados. Además, volvió a solicitar al TPI-Aibonito que declarara "*Ha Lugar*" su solicitud y que ordenara la imposición de honorarios de abogados.

Posterior a esta súplica de la apelante, el TPI-Aibonito emitió una *"Sentencia Sumaria"*, el 30 de septiembre de 2024, la cual fue notificada a las partes el 21 de octubre siguiente.[26] Mediante este dictamen, el Foro Primario declaró "*Ha Lugar*" la solicitud de sentencia sumaria de los apelados, y, en consecuencia, desestimó, con perjuicio, la demanda de la apelante. El TPI-Aibonito fundamentó su decisión en el hecho de que la apelante no cumplió con el requisito jurisdiccional, conforme la Ley Núm. 90-2020, supra, de notificar a su patrono del alegado acoso laboral en su

---

[26] Apéndice del recurso KLAN202401034, pág. 1.

contra. Además, sostuvo que, tras el descubrimiento de prueba, quedó demostrado que la investigación realizada por Oriental Bank fue permitida, válida, correcta, y no constituyó acoso laboral. Así, ante la inexistencia de hechos sustantivos en controversia, y el incumplimiento de la apelante con el procedimiento establecido en la Ley Núm. 90-2020, supra, el TPI-Aibonito determinó que los apelados no incurrieron en acoso laboral y desestimó el pleito.

Inconforme con el proceder del Foro Primario, la apelante recurrió ante esta Curia mediante recurso de *"Apelación"*. Este fue presentado el 20 de noviembre de 2024, y le imputa al TPI-Aibonito los siguientes señalamientos de error:

> **PRIMER ERROR**: Erró el Honorable Tribunal de Primera Instancia, al establecer que no existen hechos controvertidos que invaliden dictar Sentencia Sumaria en este caso, estableciendo que el hostigamiento laboral no sucedió.

> **SEGUNDO ERROR**: Erró el Honorable Tribunal, al establecer que no se cumplieron los requisitos de la Ley Núm. 90 del 7 de agosto de 2020, conocida como la Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico, ("Ley Núm. 90") en contra del Hostigamiento Laboral, razón para la desestimación.

Tras varios trámites procesales, los apelados presentaron su alegato en oposición. Con el beneficio de la comparecencia de todas las partes, y perfeccionado el recurso, procedemos a expresarnos.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil de Puerto Rico se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento, vista evidenciaria, sentencia, reconsideración, *apelación*, y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA, Ap. VIII, R. 52; *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, se reconoce que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Regla 13(A) del Reglamento del Tribunal de Apelaciones 4 LPRA Ap. XXII-B, R. 13(A); Art. 4.006(a) Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24y.

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez*

*Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

### B. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Birriel Colón v. Econo y otro,* 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Acevedo y otros v. Dep*to. Hacienda y otros, 212 DPR 335, 350 (2023); *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *BPPR v. Zorrilla Posada y otro*, 2024 TSPR 62, 214 DPR ___ (2024); *Cruz, López v. Casa Bella y otros*, supra; *Oriental Bank v. Caballero García,* supra, pág. 678; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, supra.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 979; *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Id.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, supra; *Oriental Bank v. Caballero García,* supra, pág. 679; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su

pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón*, supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Id.* Es decir, el hecho de no oponer a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión*, supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. *Id.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Id.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, supra, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole*, supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, supra; *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.,* supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Id.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* supra, pág. 472.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680

(2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119.

Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.
> *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *BPPR v. Zorrilla Posada y otro,* supra; *Cruz, López v. Casa Bella y otros,* supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho.

### C. Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico de 2020

La Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico, Ley Núm. 90 de 7 de agosto de 2020, 29 LPRA sec. 3111, *et seq.,* persigue "una vigorosa política pública contra todo tipo de acoso laboral que afecte el desempeño del trabajador, altere la paz industrial y atente contra la dignidad de los trabajadores, no importa cuál sea su categoría o clasificación de empleo". 29 LPRA sec. 3112. Esta ley creó una causa de acción a favor de aquellos

empleados que son víctimas de acoso laboral en su lugar de empleo, sin importar la naturaleza del empleo, su categoría, jerarquía o clasificación. 29 LPRA sec. 3113.

En su Artículo 3, la Ley Núm. 90-2020 define el acoso laboral como:

> [A]quella conducta malintencionada, no deseada, repetitiva y abusiva; arbitraria, irrazonable y/o caprichosa; verbal, escrita y/o física; de forma reiterada por parte del patrono, sus agentes, supervisores o empleados, ajena a los legítimos intereses de la empresa del patrono, no deseada por la persona, que atenta contra sus derechos constitucionales protegidos, tales como: la inviolabilidad de la dignidad de la persona, la protección contra ataques abusivos a su honra, su reputación y su vida privada o familiar, y la protección del trabajador contra riesgos para su salud o integridad personal en su trabajo o empleo. Esta conducta de acoso laboral crea un entorno de trabajo intimidante, humillante, hostil u ofensivo, no apto para que la persona razonable pueda ejecutar sus funciones o tareas de forma normal.
> 29 LPRA § 3114(3).
> Reyes Berríos v. ELA, 2024 TSPR 53, 213 DPR ___ (2024).

A su vez, el Artículo 5 del aludido estatuto establece que todo patrono que incurra, fomente o permita el acoso laboral, será civilmente responsable frente a las personas afectadas. 29 LPRA sec. 3115. De igual forma, reconoce que las causas de acción que surjan bajo el palio de dicha Ley pueden ser combinadas con acciones que surjan bajo otros estatutos. 29 LPRA sec. 3117.

Entre los actos que no se considerarán conducta constitutiva de acoso laboral, el Artículo 8 de la Ley Núm. 90-2020 enumera los siguientes: (1) Actos destinados a ejercer la potestad disciplinaria que legalmente corresponde a los supervisores sobre sus subalternos; (2) La formulación de exigencias para protección de la confidencialidad en los servicios a los que se dedica el patrono o la lealtad del empleado hacia su patrono; (3) La formulación o promulgación de reglamentos o memorandos para encaminar la

operación, maximizar la eficiencia y la evaluación laboral de los empleados en razón a los objetivos generales del patrono; (4) La solicitud de cumplir deberes adicionales de colaboración cuando sea necesario para la continuidad del servicio o para solucionar situaciones difíciles en la operación y servicios que ofrece el patrono; (5) Las acciones administrativas dirigidas a la culminación de un contrato de trabajo, con justa causa o por periodo fijo de tiempo, previsto en el ordenamiento jurídico de Puerto Rico; (6) Las acciones afirmativas del patrono para hacer cumplir las estipulaciones contenidas en los reglamentos de administración de recursos humanos o de cláusulas de los contratos de trabajo; y (7) Las acciones afirmativas del patrono para que se cumplan con las obligaciones, deberes y prohibiciones que rigen por ley. 29 LPRA sec. 3118.

Por otro lado, y en lo aquí pertinente, el Artículo 10 de la Ley Núm. 90-2020, dispone que:

> [T]oda persona que reclame ser víctima de acoso laboral deberá comunicarlo siguiendo el procedimiento y protocolo adoptado por su patrono, el cual, según ya dispuesto, deberá ser amparado en las guías uniformes establecidas por el Departamento del Trabajo y Recursos Humanos, la Oficina de Administración y Transformación de los Recursos Humanos del Gobierno de Puerto Rico, la Rama Legislativa y la Rama Judicial, según aplique.
>
> Si las gestiones realizadas conforme al procedimiento y protocolo adoptado por el patrono resultan infructuosas, el empleado afectado acudirá al Negociado de Métodos Alternos para la Solución de Conflictos de la Rama Judicial. Si habiéndose orientado, las partes no aceptan la mediación o el mediador no recomienda la misma, entonces se podrá acudir ante la sala del tribunal competente presentando evidencia acreditativa de que se agotó dicho mecanismo alterno y radicar la acción civil que provee esta Ley.
>
> 29 LPRA sec. 3120.

**III.**

Vargas Negrón recurre ante esta Curia arguyendo que el Foro Apelado se equivocó al dictar sentencia sumaria en su contra. En esencia, la apelante sostiene que se cumplieron con los requisitos de la Ley Núm. 90-2020, supra, y que existen hechos controvertidos que invalidan el dictamen de sentencia sumaria. *No le asiste razón.*

Por estar estrechamente relacionados entre sí, *atenderemos ambos señalamientos de error* en conjunto. En el *primer señalamiento de error*, la apelante arguye que el TPI-Aibonito erró al concluir que no existen hechos controvertidos que establecen que el hostigamiento laboral en su contra no sucedió. A su vez, en el *segundo señalamiento de error*, la apelante arguye que el Foro Apelado erró al desestimar el pleito de epígrafe por resolver que no se cumplieron los requisitos de la Ley Núm. 90-2020, supra.

Al revisar la moción para que se dicte sentencia sumariamente de los apelados, colegimos que los documentos reseñados previamente, en efecto, colocaron en posición al TPI-Aibonito para concluir que la apelante no cumplió los requisitos de la Ley Núm. 90-2020, supra, y no estableció que, en efecto, ocurrió hostigamiento laboral hacia su persona. En específico, la apelante fracasó en demostrar que las acciones instadas por Oriental Bank fueron actos de hostigamiento, y no actos destinados a ejercer su potestad disciplinaria, o cumplir con las obligaciones, deberes y prohibiciones regidos por ley.

Además, luego de una sosegada evaluación del expediente que nos ocupa, de la solicitud de sentencia sumaria de los apelados, y la revisión de *novo* sobre la misma, *lo cual en derecho nos corresponde*, hemos podido constatar que las determinaciones de hechos y derecho realizadas por el TPI-Aibonito en su "*Sentencia Sumaria*" se sustentan con los documentos presentados por estas.

A pesar de la apelante haber alegado, en su escrito en oposición, que existía controversia en cuanto a veinticuatro (24) de los ochenta y seis (86) hechos incontrovertidos expuestos por los apelados, estamos forzados a coincidir con el TPI-Aibonito en cuanto a que Vargas Negrón ***no controvirtió adecuadamente los referidos hechos, sino que se limitó a repetir sus alegaciones***. Por lo tanto, por entender que la apelante no pudo controvertir los hechos, expuestos y probados, por los aquí apelados, es menester concluir que la apelante no logró rebatir la solicitud de sentencia sumaria, conforme a lo exigido en la Regla 36 de Procedimiento Civil, supra. En mérito de lo antes expuesto, sostenemos el dictamen apelado en toda su extensión.

## IV.

*Por los fundamentos que anteceden, confirmamos el dictamen del Foro Apelado.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones